IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | CASE NO. 2:18-CR-255 |
| v. | : | Judge Edmund A. Sargus, Jr. |
| SHAWN MARSHALL, | | SENTENCING MEMORANDUM |
| Defendant. | : | |

I.   SENTENCING FRAMEWORK

The Court is tasked with imposing "a sentence sufficient, but not greater than necessary," to vindicate Congress' sentencing mandate, set forth in 18 U.S.C. § 3553(a)(2). The Court must begin sentencing proceedings by first correctly calculating the applicable guideline range. *Gall v. United States*, 128 S. Ct. 586, 596 (2007). However, this guideline range is only "the starting point and the initial benchmark." The Court "may not presume that the Guideline range is reasonable. *Id.* at 596-97. A sentencing court is "free to make its own reasonable application of the 18 U.S.C. § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough v. United States*, 552 U.S. 85, 113 (2007) (Scalia, J., concurring). "[E]xtraordinary circumstances [are not required] to justify a sentence outside of the Guidelines range." *Gall* at 595.

Having correctly calculated the applicable guideline range, the Court must then consider the nature and circumstances of the offense and the history and characteristics of the defendant. The Court must consider the need for the sentence imposed: (1) to reflect the seriousness of the offense, promote respect for the law, to provide just punishment for the offense, and (2) afford adequate deterrence to criminal conduct, (3) to protect the public from further crimes of the

defendant, and (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(1), (2). Finally, the Court must consider the kinds of sentences available, the applicable guideline range, pertinent policy statements, avoidance of unwarranted sentencing disparities, and the need to provide restitution to victims.  18 U.S.C. § 3553(a)(3)-(7).

    A.    **Nature and Circumstances of the Offense and Mr. Marshall's History and Characteristics -- § 3553(a)(1).**

Mr. Marshall spent most of his life in northern Ohio.  He grew up in an abusive home where he was exposed to drugs and alcohol, and physically and mentally abused by his mother's boyfriend. By age 9 he was sent away to live with his father, little more than a stranger, because he had started acting out in his mother's home.  At his father's home he encountered yet another abusive step-parent.  By age 11 his step-mother was physically abusing him and letting her dog attack him without intervening.  Neither his parents nor his step-parents (with the exception of a later step-mother) gave him emotional support or guidance.  His father has been in a Virginia prison for murder since 2001.  He now has a good relationship with his mother but maintains contact with only one of his half-siblings.

Mr. Marshall is a young daughter but their relationship is strained due to the fact that he has been in prison since she was six months old.  She is cared for by Mr Marshall's mother, because the child's mother is an incarcerated methamphetamine addict.  Mr. Marshall feels a lot of guilt for his missing his daughter's life and hopes to build a good relationship with her in the future.

Mr. Marshall has a variety of mental health problems and has been prescribed various medications over the years. Since his incarceration at Butler Co. Jail he has started taking Prozac, with noticeable improvements to his mental status.  He recognizes that he needs (and wants)

2

treatment as well as education. His education ended after the 9th grade and to date he has been unable to complete his GED.

### B. Kinds of Sentences Available – §3553(a)(3)

There is no mandatory minimum sentence attendant to Mr. Marshall's conviction, and the maximum penalty is five (5) years' imprisonment. The Court has broad authority in sentencing Mr. Marshall; however, the parties have agreed to a sentence of imprisonment at the low end of his Guideline range.

### C. The Sentencing Range Established by the Guidelines

Neither party has objected to the Guidelines calculation set forth in the Presentence Investigation Report (PSR). The PSR establishes an Adjusted Offense Level of 17, with a Criminal History Category IV. The advisory Guideline range stated in the PSR is 37-46 months.

However, the Criminal History Category is based on a conviction the underlying facts of which occurred during the same period of time (the same spree) as the instant offense. By including that conviction Mr. Marshall's criminal history is overrepresented. In 2020, he was convicted in the NDOH for mailing threatening communications between April 18 and June 3, 2016. (PSR ¶49) The letters from the instant case (SDOH) were also mailed/received during that same two-month time period. (PSR ¶6) All letters were written and sent in the same two-month time period, five years ago, from his prison cell where he was serving the last three years of his state prison sentence. In essence, one case was split into two prosecutions. The defense requests a downward variance to Criminal History Category III, to correct the overrepresentation of his criminal history.

D.  **Congress' Mandate -- §3553(a)(2)**

**i. The Court Must Fashion a Sentence that Reflects the Seriousness of the Offense, Promotes Respect for the Law, Provides Just Punishment, and Deters Crime.**

Sadly, Mr. Marshall committed these offenses at a time in his life where he just wanted to stay in prison but in a less dangerous setting. While serving his state sentence he was placed in a facility where he received minimal or no services and the nature of the state conviction put him in fear for his life. He believed that a federal institution would be safer and would offer more programming and treatment.

There were no breaks in Mr. Marshall's federal custody since his initial federal arrest on October 31, 2018.

| | |
|---|---|
| October 31, 2018 | NDOH arrest |
| December 16, 2018 | SDOH indictment |
| March 22-July 17, 2019 | BOP evaluation for NDOH case |
| February 3, 2020 | NDOH sentencing |
| August 26, 2020 | SDOH initial appearance & arraignment |
| January 4, 2021 | SDOH guilty plea |
| May 7, 2021 | SDOH sentencing |

For some reason he was not transported to the SDOH after his sentencing in the NDOH. Instead, he sat in the NDOH for at least a month and then moved around within the federal system until six months after he was sentenced in NDOH.

Although the parties have agreed to a concurrent sentence with the NDOH sentence, Mr. Marshall will get minimal benefit from that agreement. He will be sentenced on May 7, 2021, and that is the date his concurrent sentence will begin. He gets no concurrency for the period between

February 3, 2020 and May 7, 2021, as that is counted as prior custody credit toward his first sentence. The PSR reflects his release date on the NDOH case as May 22, 2022. (PSR, pg. 2) Thus, the benefit of his agreement comes out to approximately one year. The Court should take that fact into consideration in determining his Guidelines, his Criminal History, and his sentence.

### ii. Protection of the Public – §3553(a)(2)(C).

This Court must also consider the protection of the public under §3553(a). There is no question that Mr. Marshall has a criminal history that must give this Court pause. His previous state conviction was very dangerous, he has had problems in prison, and his previous mental health issues have not be addressed in any meaningful manner. His various diagnoses make it clear that he needs serious intervention and treatment. Despite his previous offenses and his problems in prison, one important factor has changed. He no longer wants to be locked up for more and more time, and he has grown into a realization that he can have a life outside the prison walls. Now he wants to experience that life.

At Mr. Marshall's change of plea proceeding, this Court suggested that mental health treatment could or should start sooner than later. Mr. Marshall voluntarily started taking medication while in jail on the instant case and Counsel has noted an obvious shift in his behavior and attitude since he started taking the medication. Hopefully that medication plus treatment will make an appreciable difference in his life. Counsel agrees that mental health treatment is a big concern for Mr. Marshall, and his ability to succeed in the outside world will depend on his ability to receive and apply the most intensive resources the Court and probation have to offer.

### E.     The Need to Avoid Unwarranted Sentencing Disparities

As discussed in the preceding paragraphs, Mr. Marshall will receive only minimal benefit from his agreement for a concurrent sentence. Had he been brought back to the SDOH earlier, and had his case not been slowed considerably by the pandemic and resulting shutdown, he could have

entered a plea and been sentenced in 2020. If that had happened, more of his first sentence would still lie before him and he would have gotten a greater benefit of his agreement to concurrent sentences. The Court should take into consideration all of the above-referenced factors in fashioning a sentence that gives him the benefit of his agreement and protects society.

## IV. CONCLUSION

In light of the aforementioned factors, Mr. Marshall requests a downward variance from the Criminal History level reflected in the PSR. He also requests a Guidelines range, and resulting sentence, that reflects a more robust benefit of his agreement to concurrent sentences.

Respectfully submitted,

DEBORAH L. WILLIAMS
FEDERAL PUBLIC DEFENDER

/s/ Deborah L. Williams
(AZ Bar No. 010537)
Federal Public Defender
Office of the Federal Public Defender
10 W. Broad Street, Suite 1020
Columbus, Ohio 43215
Telephone: (614) 469-2999
Facsimile: (614) 469-5999
Deborah_williams@fd.org

Counsel for Shawn Marshall

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I certify that a copy of this Memorandum was served on AUSA Jessica Knight by CM/ECF.

/s/ Deborah L. Williams
Deborah L. Williams (AZ Bar No. 010537)
Federal Public Defender